# CRIMINAL MINUTES – GENERAL    'O'

| Case No. | 2:13-cr-00824-CAS-1 | Date | May 8, 2017 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | Matthew O'Brien |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Juan Carlos Garcia | X | X | | Mark Windsor | X | | X |

**Proceedings:**     **DEFENDANT'S MOTION TO SUPPRESS (Dkt. 229, filed March 9, 2017)**

## I.    INTRODUCTION & BACKGROUND

On November 22, 2013, the government filed an indictment as to defendant Juan Carlos Garcia, charging two counts of methamphetamine distribution. Dkt. 1.

On December 10, 2013, defendant was arrested and interviewed by Special Agent Jonathan Bauman and Task Force Officer Frank Flores. Shortly after the interrogation began Flores read defendant his <u>Miranda</u> rights, defendant acknowledged that he understood those rights, and defendant signed a waiver of his rights. Defendant subsequently engaged in a nearly hour-long interrogation.

On July 8, 2014, a jury convicted Garcia on Count 1, and acquitted him on Count 2. Dkt. 130. On April 14, 2016, the Ninth Circuit vacated Garcia's conviction and remanded the case to this Court. Dkt. 169.

On March 9, 2017, defendant filed the instant motion to suppress his post-arrest statements to Bauman and Flores. Dkt. 229 ("Motion"). Defendant argues that his statements were obtained in violation of the Fifth Amendment because defendant relinquished his <u>Miranda</u> rights involuntarily.[1] The government filed its opposition on March 21, 2017, dkt. 236 ("Opp'n"), and defendant filed his reply on April 3, 2017, dkt. 243 ("Reply").

---

[1] Defendant concedes in his reply that he did not make an unambiguous invocation of the right to counsel. Dkt. 243 at 2.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## III. LEGAL STANDARD

"In criminal trials, in the courts of the United States, whenever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment . . . commanding that no person shall be compelled in any criminal case to be a witness against himself." Missouri v. Seibert, 542 U.S. 600, 607 (2004) (quotation marks omitted). To reduce the risk of coerced confessions, "this Court in Miranda concluded that 'the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.'" Id. (quoting Miranda v. Arizona, 384 U.S. 436, 467 (1966)). However, Miranda holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444.

"Voluntariness must be established by a preponderance of the evidence." United States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir. 1985). The voluntariness "inquiry has two distinct dimensions." Moran v. Burbine, 475 U.S. 412, 421 (1986).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. (quotation marks omitted). The assessment of the totality of the circumstances may include consideration of the length and location of the interrogation; evaluation of the maturity, education, physical and mental condition of the defendant; and determination of whether the defendant was properly advised of his Miranda rights. Doody v. Schiro, 548 F.3d 847, 859 (9th Cir. 2008).

A Miranda warning and a waiver are not dispositive on the issue of voluntariness. Id. ("[A]lthough adequate Miranda warnings provide a measure of protection against coercion in custodial police interrogations, the protection actually provided in any given case depends on how effective the warnings as given and implemented were in conveying their layered messages."). However, giving Miranda warnings and obtaining a waiver has "generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even

though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver." Seibert, 542 U.S. at 608–09; see also DeWeaver v. Runnels, 556 F.3d 995, 1003 (9th Cir. 2009) ("However, if interrogators obtained a confession after Miranda warnings and a valid waiver, the confession was likely voluntary.").

## IV. DISCUSSION

Defendant argues that he did not have "a full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it" because (a) he did not know whether he was under arrest or why he was under arrest; (b) he did not understand his right to counsel when he signed the Miranda waiver; (c) he believed his choice to answer Flores and Bauman's questions would buy him good favor with the officers; (d) he was high on methamphetamine and drunk on alcohol at the time of his interrogation; and (e) "he is no criminal sophisticate," but instead had a "minimal criminal history" and "lacked familiarity with the workings of police procedure." Motion at 13–15.

More specifically, defendant asserts that, when he was asked to sign the Miranda waiver, he did not understand the nature of the right he was giving up, as demonstrated by his question: "By me doing what am I allowing you guys to do what?" Id. at 14; see dkt. 229-1 ("Interrogation Transcript") at 212. However, defendant answered affirmatively after Flores delineated defendant's rights under Miranda and asked defendant whether he understood those rights:

Officer Flores: You have the right to remain silent, do you understand that right?

Defendant: Yes.

Officer Flores: Anything you say can be used against you in a court, do you understand?

Defendant: Yes.

Officer Flores: You have the right to talk to a lawyer for advice before we ask any questions, do you understand?

Defendant: Yes.

Officer Flores: You have the right to have a lawyer with you during questioning do you understand?

> Defendant: Yes.
>
> Officer Flores: Ok, if you decide to not answer any questions without a lawyer present you have the right to stop answering at any time. You can talk as much as you want at some point you are done just relay that, do you understand?
>
> Defendant: Yes, sir.

Interrogation Transcript 211–13. After answering yes to each question, defendant stated: "Those are my Miranda rights, right?" Id. at 213. Defendant subsequently said: "I know I can stop whenever I want, I don't have to talk to you guys. You know if I want a lawyer right now, ok I want a lawyer. I know you guys by law you can't." Id. at 212.[2] Upon reviewing a video recording of the interrogation, dkt. 239, it is clear that defendant meant that if he wanted a lawyer, all he had to say was "ok I want a lawyer." Defendant then signed the Miranda waiver. Id. Accordingly, the Court finds that defendant understood his right to counsel.

With respect to whether defendant understood his arrest and charges, defendant notes that he repeatedly asked Flores and Bauman what they wanted to talk to him about and what the charges against him were. Motion at 14–15; Interrogation Transcript at 213, 225, 242, 248. The Court notes, however, that after defendant signed the Miranda waiver, Flores stated: "Yeah you are charged with sales, methamphetamine[.]" Interrogation Transcript at 212. In addition, toward the end of the interrogation, when Bauman points out to defendant that he is "already arrested," defendant responded, "No, I know." Id. at 242.

As to defendant's belief that speaking to Flores and Bauman would result in leniency, the Court notes that Bauman began the interrogation by stating:

> Before you say anything, I just want to let you know that if you do tell us things and talk to us and you help us out that I will convey that information that you were cooperative to the prosecutor and that could help you out in the future, but I cannot make any promises whatsoever that it will.

Interrogation Transcript at 210. Toward the end of the interrogation, when defendant asked what the officers would do "after [he told] all that stuff," Bauman reminded defendant that he had earlier explained that he couldn't promise defendant any leniency, to which defendant responded: "So basically, I burned myself right?" Id. at 248. Thus, contrary to defendant's assertion that "he did not understand whether or not he was helping or hurting himself by

---

[2] The parties agree that pages 212 and 213 of the Interrogation Transcript are out of order. Opp'n at 4 n.1; Reply at 1.

speaking to the officers," Reply at 5, it appears clear that defendant understood that he *had* hurt himself by speaking to Flores and Bauman.

Defendant told Flores and Bauman that he had been drinking the night before and was hungover. Id. at 209, 210. Defendant did not tell the officers that he was drunk and high at the time of his interrogation, though he testified to that effect during his first trial. Dkt. 229-2 at 292.

Contrary to defendant's assertion that he is "no criminal sophisticate," defendant has been convicted for one crime and he has been arrested for six offenses. See dkt. 141, Presentence Investigation Report ¶¶ 39–48. Accordingly, defendant "might fairly have been presumed to be familiar with Miranda rights procedures." Heredia-Fernandez, 756 F.2d at 1416.

At oral argument, counsel for defendant urged this Court to apply the exclusionary rule analysis advanced in Davis v. United States, 564 U.S. 229 (2011). Counsel argued that, under Davis, defendant's statements ought to be excluded because there is other evidence that the government can submit that is more probative than defendant's statements to Flores and Bauman. However, the Supreme Court in Davis did *not* hold that certain evidence ought to or may be excluded if additional evidence could be introduced instead. Rather, the Supreme Court in Davis reiterated the "good faith" exception to the exclusionary rule in the Fourth Amendment context and held that "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Id. at 237.

The Court concludes that defendant voluntarily waived his Miranda rights. Defendant was advised of his Miranda rights, verbally affirmed that he understood such rights, and signed a written waiver indicating that he understood those rights. Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir. 1990) ("The written waiver is particularly strong evidence that the waiver is valid"). Furthermore, law enforcement officials did not use "physical or psychological pressure" to elicit the waiver and defendant has not otherwise demonstrated "police overreaching." Cox v. Del Papa, 542 F.3d 669, 675 (9th Cir. 2008). Defendant has a criminal history and has had prior experience with Miranda. Therefore, considering totality of the circumstances, the government has met its burden of showing, by a preponderance of the evidence, that defendant's waiver of his Miranda rights was voluntary. Colorado v. Connelly, 479 U.S. 157, 168 (1986). In addition, applying Davis as defendant suggests, the Court cannot conclude that suppressing defendant's statements would serve "the general goal of deterring improper police conduct nor the Fifth Amendment goal of assuring trustworthy evidence[.]" Oregon v. Elstad, 470 U.S. 298, 308 (1985). The Court therefore declines to suppress defendant's post-arrest statements to Bauman and Flores.

Defendant also requests that the Court conduct an evidentiary hearing to allow defendant to demonstrate that his statements were obtained in violation of his constitutional rights. Motion at 16. A motion to suppress requires an evidentiary hearing "only when the moving papers allege with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000). The Court has reviewed the transcript and video recording of the interrogation and the parties do not dispute what defendant or the officers said during the interrogation. Defendant has "identified no facts which, if proved, would allow the court to suppress the confession." Id. at 621. Accordingly, the Court finds that an evidentiary hearing is not required.

## V.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion to suppress.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |